UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASSURANCE COMPANY OF AMERICA and MARYLAND CASUALTY COMPANY,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>LEXINGTON INSURANCE COMPANY; NORTH AMERICAN SPECIALTY INSURANCE COMPANY; and DOES 1-10,<br><br>　　　　Defendants. | No.  2:11-cv-02928 JAM JFM<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

　　　This matter is before the Court on Plaintiffs' Assurance Company of America and Maryland Casualty Company's (collectively "Plaintiffs") Motion for Partial Summary Judgment (Doc. #16). Defendant Lexington Insurance Company ("Defendant") opposes the motion (Doc. #20) and Plaintiffs replied (Doc. #21).[1]  For the following reasons, Plaintiffs' motion is granted.

---

[1] This motion was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled for October 17, 2012.

1

I. PROCEDURAL BACKGROUND

Plaintiffs originally filed this action August 8, 2011, in Sacramento County Superior Court against Defendant and North American Specialty Insurance Company ("NAC") (Doc. #2). Defendants removed the case on November 18, 2011. Id. On September 19, 2012, Plaintiffs filed the instant motion for partial summary judgment on the issue of whether Defendant had a duty to defend its named insured, Criner Construction Company ("Criner"), and its additional insured, Swinerton Builders, Inc. fka Swinerton & Walberg Co. ("Swinerton"), in the underlying action (Doc. #16). On September 26, 2012, NAC was dismissed with prejudice (Doc. #17), leaving Lexington as the sole Defendant in this case.

II. FACTUAL BACKGROUND

On or about February 7, 2005, Sacramento Hotel Partners, LLC, filed the underlying action against Swinerton alleging construction defects at the Embassy Suite Hotel in Sacramento, California. Pl.'s Statement of Undisputed Facts (Doc. #15), ("PSUF") at ¶ 1.[2] In the "Amended Final Statement of Claims" filed in the underlying action, Sacramento Hotel Partners alleged

---

[2] Plaintiffs seek judicial notice of the complaint and the First Amended Cross-Complaint filed in the underlying action, Sacramento Hotel Partners, LLC v. Swinerton Builders, Inc. fka Swinerton & Walberg Co, Sacramento County Superior Court Action No. 05 AS 00595 (Doc. #16). The filings are the proper subject of judicial notice because under Federal Rules of Evidence Rule 201, a court may take judicial notice of "matters of public record." Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001) (citation omitted).

2

1   among other things, "misaligned doors."  Id. at ¶ 2.
2       Criner was a subcontractor involved in the project hired by
3   Swinerton, the general contractor, to install doors and hardware.
4   Id. at ¶ 2.  The subcontract agreement between Swinerton and
5   Criner included a subcontract indemnity clause.  Id. at ¶ 2.
6   Swinerton tendered its defense to Criner and Criner's insurance
7   broker through letters dated July 14, 2006.  Id. at ¶¶ 6, 7.
8       On or about November 19, 2007, Swinerton filed a First
9   Amended Cross-Complaint ("FACC"), referencing Criner in the Tenth
10  Cause of Action for Declaratory Relief asking the court in the
11  underlying action to find that the subcontract agreement's
12  indemnity clause obligated Criner to provide defense and
13  indemnity to Swinerton.  Id. at ¶ 5.
14      Plaintiffs agreed to and defended Criner, and shared in the
15  defense of Swinerton as an additional insured.  Id. at ¶¶ 11, 12.
16  As mentioned above, Plaintiffs now seek contribution from
17  Defendant for the cost of defending and indemnifying Criner and
18  Swinerton in the underlying lawsuit.
19          A.  Tender History
20      On December 11, 2008, Plaintiffs sent a letter to Defendant,
21  among others, requesting all of Criner's insurers to agree to
22  defend and indemnify Criner.  Id. at ¶ 8.  Receiving no response,
23  Plaintiffs sent follow-up letters on February 10, 2009, and
24  February 21, 2009.  Id.  No response to these letters was
25  received from Defendant.  Plaintiffs tendered directly to
26  Defendant through a letter dated November 20, 2008.  Id. at ¶ 9.
27  Defendant acknowledged receipt of this letter on November 26,
28  2008.  Id.  No coverage position letter was ever issued by

3

Defendant.

B. <u>Insurance Policy</u>

Defendant issued to Criner policy number 11143601, effective August 9, 2004 through August 9, 2005. <u>Id.</u> at ¶ 13. The policy provides the following insurance agreement:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

"Property damage" is defined as follows:

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

The insurance policy also has the following exclusions:

> k. Damage to Your Product
> "Property damage" to "your product" arising out of it or any part of it.
>
> l. Damage to Your Work
> "Property damage" to "your work" arising out of it or any part of it and included in the "product-completed operations hazard."
>
> This exclusion does not apply if the damaged work or the work out which the damage arises was performed on your behalf by a subcontractor.
>
> m. Damage to Impaired Property or Property Not Physically Injured
> "Property damage" to "impaired property" or property that has not been physically injured arising out of:
>
>     (1)   A defect, deficiency, inadequacy or

4

>     dangerous condition in "your product" or
>     "your work"; or . . . .

### III. OPINION

#### A. Legal Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses."  Celotex v. Catrett, 477 U.S. 317, 323-324 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). If the moving party meets its burden, the burden of production then shifts so that "the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'"  T.W. Electrical Services, Inc. v. Pacific Electric Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting Fed. R. Civ. P. 56(e)).  The Court must view the facts and draw inferences in the manner most favorable to the non-moving party.  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).  "[M]ere disagreement or bald assertion that a genuine issue of material fact exists will not preclude the grant of summary judgment". Harper v. Wallingford, 877 F. 2d 728, 731 (9th Cir. 1987).

The mere existence of a scintilla of evidence in support of

the non-moving party's position is insufficient: "There must be evidence on which the jury could reasonably find for [the non-moving party]." Anderson, 477 U.S. at 252.  This Court thus applies to either a defendant's or plaintiff's motion for summary judgment the same standard as for a motion for directed verdict, which is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id.

     B.   Evidentiary Objections

Defendant's evidentiary objections (Doc. #20-4) to portions of Shira Jefferson's Declaration (Doc. #16-7) and two exhibits attached thereto, filed in support of Plaintiffs' motion are overruled.  Plaintiffs have provided sufficient foundation with respect to the evidence in question.  Shira Jefferson in her declaration states that she was responsible for handling the claims files established by Plaintiffs in connection with the claims against Criner and Swinerton and as part of her responsibility, she has personal knowledge of the facts in her declaration and the attached exhibits.  Declaration of Shira Jefferson, Doc. #16 ("Jefferson Dec.") at ¶ 1.  Moreover, when the objection is not based on evidence's authenticity, a court may still consider the evidence.  Burch v. Regents of Univ. of California, 433 F. Supp. 2d 1110, 1120-21 (E.D. Cal. 2006). Finally, Defendant's objections based on when Defendant received the evidence are relevance objections and therefore redundant. Id. at 1119 ("A court can award summary judgment only when there is no genuine dispute of material fact. It cannot rely on irrelevant facts, and thus relevance objections are redundant.")

6

C.   Discussion

   1.   Duty to Defend

Plaintiffs claim that Defendant had a duty to defend Criner and Swinerton because the complaint, along with extrinsic evidence, created a potential for coverage.  Defendant argues that no duty to defend existed because there are no facts to show that Criner could have been held liable in the underlying action for consequential property damage.  Plaintiffs reply that Defendant has only raised disputed facts relevant to coverage and that such facts create, not eliminate, a duty to defend.

To seek equitable contribution from a coinsurer, the party claiming coverage "must prove the existence of a potential for coverage" under the policy terms.  Montrose Chem. Corp. of Cal. v. Super. Ct., 6 Cal.4th 287, 300 (1993).  Thus, claims that are potentially covered raise the nonparticipating coinsurer's duty to defend.  Safeco Ins. Co. v. Super. Ct., 140 Cal.App.4th 874, 878 n.2 (2006).  In determining whether the coinsurer owes a duty to defend, courts compare the allegations of the complaint and extrinsic evidence with the terms of the policy.  Maryland Cas. Co. v. Nat'l Am. Ins. Co. of Cal., 48 Cal.App.4th 1822, 1829 (1996).

Once the party claiming coverage shows a potential for coverage under the coinsurer's policy, the coinsurer must conclusively prove with undisputed evidence that no coverage existed under the policy.  Id. at 1832.  Merely raising a triable issue of material fact will not defeat summary judgment in this instance.  Id. at 1831.

7

a. <u>Criner</u>

Defendant contends it had no duty to defend Criner. It argues that any damage to the door frames by the doors is not covered property damage under the insurance policy because Criner installed both the doors and the frames. Moreover, Defendant contends that even if Criner only installed the doors, there are no facts to suggest that the doors caused damage to the door frames or caused any other consequential damage. Plaintiffs argue that facts known or easily obtained at the time of tender suggest that the installation of the doors caused consequential damage.

Whether Criner installed the door frames is a disputed fact. Although the subcontract agreement mentions the installation of the door frames, Attachment C of the subcontract indicates that "hollow metal frame installation" is excluded from Criner's scope of work, and Attachment D does not include door frame installation as part of the subcontract price. Subcontract Agreement, Exhibit 2 to Jefferson Dec. ¶ 3. As a result, the subcontract agreement raises a disputed fact and Defendant could not deny coverage by simply assuming that Criner installed the door frames. Accordingly, Defendant cannot defeat Plaintiffs' motion for summary judgment in this case on this ground. <u>Maryland Cas. Co.</u>, 48 Cal.App.4th at 1829.

Nonetheless, Defendant is correct that general liability policies, such as the policy Defendant issued Criner, apply when an insured's work or defective materials "*cause injury to property other than the insured's own work or products*." <u>Anthem Electronics, Inc. v. Pac. Employers Ins. Co.</u>, 302 F.3d 1049 (9th

1  Cir. 2002) (citing <u>Maryland Cas. Co.</u>, 221 Cal.App.3d at 967)
2  (emphasis in original).  Therefore, Defendant's duty to defend
3  depends on whether at the time of tender, allegations in the
4  underlying complaint or other facts known to Defendant indicated
5  a potential for covered consequential damage caused by the
6  doors.
7       In this case, most of the extrinsic facts known to
8  Defendant at the time of tender do not necessarily demonstrate a
9  potential for coverage because at most, the evidence indicates
10 that the underlying action referred to repairs and damage to
11 Criner's own work.  First, the "Amended Final Statement of
12 Claims" in the underlying lawsuit included an allegation of
13 "misaligned doors." Amended Final Statement of Claims, Exhibit 1
14 to Jefferson Dec. ¶ 2, at 3.  The allegation, however, refers to
15 Criner's work in hanging the doors and does not refer to damage
16 caused by the doors.
17      Second, the Jon Mohle report, assuming Defendant knew of
18 the report, includes no statement that the doors caused any
19 consequential damage.  Mohle report, Exhibit 3 to Jefferson Dec.
20 ¶ 4, at 8, 21.  Although the Mohle report refers to sticking
21 doors, it does not mention that the doors caused the sticking or
22 that the sticking caused property damage.  <u>Id.</u>  Instead, the
23 Mohle report provides that movement in the walls caused the
24 sticking and that the doors themselves would have to be
25 repaired.  <u>Id.</u>
26      Finally, the letter from Swinerton's defense counsel to
27 Criner dated July 14, 2006, states that "many of the doors
28 within the hotel do not close properly, and that the door-frames

9

are apparently askew." Letter to Criner, Exhibit 5 to Jefferson Dec. ¶ 6, at 1. The letter to Criner mentions that door frames are askew, but it does not state or even imply that the doors caused the door frames to be askew.

Unlike the previous letter, the letter from Swinerton's defense counsel to Criner's insurance broker provides that "faulty construction of the doors and door-frames has caused consequential damages." Letter to Criner's insurance broker, Exhibit 6 to Jefferson Dec. ¶ 7, at 1. Defendant argues that there is no evidence to suggest that Defendant knew of this letter at the time of tender. However, the letter is dated July 14, 2006, two years before Plaintiffs tendered Criner's defense to Defendant, and the letter was part of the underlying action. Jefferson Dec. ¶ 7. Defendant also argues that there is nothing in the letter alleging Criner caused damage to the door frames, but the letter mentions that the construction of the doors and the door frames caused consequential damages. Therefore, the letter from Swinerton's defense counsel to Criner's insurance broker created a potential for coverage.

Moreover, the FACC, which references Criner in the Tenth Cause of Action for Declaratory Relief, broadly alleged that the cross-defendants are liable for damages Swinerton may be compelled to pay as a result of the underlying action. FACC, Exhibit 2 to Plaintiffs' Request for Judicial Notice (Doc. #16), at ¶¶ 56-63. Defendant argues that the FACC failed to allege any facts related to Criner's work or damage caused thereby, but Swinerton's request was broad enough to encompass consequential damages. Arguing that the FACC does not specify Criner's work

even though it could potentially be included does not conclusively refute that potential. Anthem Electronics, 302 F.3d at 1054 (holding that the "the insurer must assume its duty to defend unless and until it can conclusively refute that potential") (citation omitted). Consequently, the FACC also created a potential for liability. Defendant fails to provide undisputed evidence that no potential for coverage existed under the policy.

Accordingly, the Court finds that Defendant had a duty to defend Criner and Plaintiffs are entitled to partial summary judgment on this issue. The Court need not address at this time Plaintiffs' argument that Defendant did not satisfy its duty to investigate.

### b. Swinerton

Plaintiffs also argue that Swinerton is an additional insured under Criner's policy. Defendant does not dispute that Swinerton qualifies. Accordingly, the Court finds that Swinerton is an additional insured under Criner's policy and Defendant also had a duty to defend Swinerton.

## III. ORDER

For the reasons set forth above, Plaintiffs' Motion for Partial Summary Judgment is GRANTED.

IT IS SO ORDERED.

Dated: November 19, 2012

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE